UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW TORO, on behalf of himself and all others similarly situated,<br><br>                                        Plaintiff,<br><br>                        v.<br><br>ARTIZAN COFFEE COMPANY,<br><br>                                        Defendant. | No. 24-cv-2253 (RA)<br><br>OPINION & ORDER |

RONNIE ABRAMS, United States District Judge:

Plaintiff Andrew Toro, who is legally blind, brings this disability discrimination complaint against Defendant Artizan Coffee Company, alleging that Artizan's website failed to accommodate visually impaired users in violation of the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), the New York State Civil Rights Law ("NYSCRL") and the New York City Human Rights Law ("NYCHRL"). Artizan now moves to dismiss on grounds of mootness, standing, personal jurisdiction and failure to state a claim. For the reasons that follow, the motion is denied, except to the extent it moves to dismiss or strike Toro's request for civil penalties under the NYCHRL.

## BACKGROUND

Unless otherwise noted, the following facts are drawn from the complaint, the parties' declarations and Artizan's website.[1]  Toro is legally blind and must use screen-reading software

---

[1] Although the Court assumes the facts in the complaint to be true for purposes of a Rule 12(b)(6) motion, *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017), it may also rely on materials outside the pleadings, including affidavits and undisputed websites, to resolve Rule 12(b)(1) and (b)(2) motions.  *See Zappia Middle E. Constr. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) ("[T]he court may resolve the disputed jurisdictional facts by referring to evidence outside of the pleadings, such as affidavits."); *Poof-Slinky, LLC v. A.S. Plastic Toys Co., Ltd.*, No. 19-cv-9399 (ER), 2020 WL 5350537, at *3 (S.D.N.Y. Sept. 4, 2020) ("As [Rule] 12(b)(2) motions are inherently matters requiring the resolution of factual issues outside of the pleadings, courts may rely on additional

to access and use websites on his computer. *See* Dkt. No. 17 ("Compl.") ¶ 2. He also claims to be a daily coffee drinker who exclusively purchases organic coffee pods to brew with his Nespresso-branded machine. *Id.* ¶ 37. In February 2024, while searching online for organic Nespresso pods, he came across the website for Artizan, *id.* ¶ 10, a Florida-based company that sells organic Nespresso pods both online and through a number of third-party brick-and-mortar stores across the country, *id.* ¶¶ 10, 14; Dkt. No. 26 ("Toro Opp'n") at 23 (citing Artizan's website for statements about "brick and mortar retailers"). Although Toro tried to make a purchase through the site, Compl. ¶ 36, he says he was unable to do so because Artizan's website was not compatible with his screen-reading software, a program called NonVisual Desktop Access ("NVDA"), *id.* ¶ 22. Toro alleges that several "barriers" specifically caused these problems, including disorienting pop-up windows that "essentially rendered the website unusable with a screen-reader," missing links that prevented him from bypassing repeated blocks of content and incorrect or duplicate headers that made it difficult to navigate the website. *Id.* ¶ 32.

According to Toro, he returned to Artizan's website several more times over the months that followed, but was still unable to make a purchase due to the accessibility issues. *Id.* ¶ 36. He nonetheless maintains that he will "undoubtedly make a purchase . . . once the accessibility barriers are removed," since Artizan sells the "exact" kind of "organic coffee pods" that he exclusively buys and which are "usually unavailable in physical stores." *Id.* ¶ 37.

Toro filed this suit in March 2024, Dkt. No. 1, and amended his complaint in August 2024 in order to include details about his ongoing attempts to purchase Artizan pods, Dkt. No. 17. After it was served, Artizan undertook an "extensive rewriting of its website code" in order to remedy

---

materials when ruling on such motions." (alterations and internal quotation marks omitted)); *Scalabrini v. PMAB, LLC*, No. 18-cv-11152 (NSR), 2020 WL 1049167, at *5 n.5 (S.D.N.Y. Mar. 3, 2020) ("[T]he Court may take judicial notice of the website as it is publicly available and the website's authenticity is not in dispute.")

the various issues identified by Toro and otherwise make its site fully accessible to the visually impaired.  *See* Dkt. No. 21 ("Artizan Br.") at 3; *see also id.* Ex. 2 ("Abril Decl.") ¶¶ 7–19. According to Julio Abril, Artizan's chief information officer ("CIO") and chief technology officer ("CTO"), it hired an outside software company to audit its website, which it then redesigned to bring into compliance with the latest Web Content Accessibility Guidelines ("WCAG")—a key website accessibility benchmark for visually impaired users.  Abril Decl. ¶ 12.  Artizan also subscribed to UserWay, a website monitoring tool that measures compliance with WCAG standards on a continuing basis.  *Id.* ¶ 13.  In total, Artizan claims that it fixed 11,000 issues with its website, *id.*, and Abril asserts that he "personally downloaded the screen reader software program" used by Toro and "confirm[ed] that all of the issues identified in the Complaint and Amended Complaint have been remedied," *id.* ¶¶ 14–15.

Artizan moved to dismiss on October 3, 2024, arguing that the case had been mooted by its website overhaul, that Toro lacked standing, that the Court lacked personal jurisdiction and that Toro's claims failed on the merits.  Dkt. Nos. 20–21.  Toro opposed, Dkt. No. 26, and included a declaration from an expert disputing Artizan's assertions that the accessibility issues had been fixed, Dkt. No. 26 Ex. 1 ("Moody Decl.").  Artizan replied and included another declaration from Abril in response.  Dkt. No. 31.

## DISCUSSION

Artizan raises multiple arguments in favor of dismissal, including standing, mootness, personal jurisdiction and failure to state a claim.  The Court addresses each in turn.

## I.    Standing

The Court first addresses Artizan's motion to dismiss for lack of standing under Rule 12(b)(1).  "For a plaintiff to have Article III standing, he must establish three things:  (1) that he

3

has an injury in fact; (2) that there is a causal connection between his injury and the conduct complained of; and (3) that his injury will be redressed by a favorable judicial decision." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022). Artizan makes three arguments on these fronts: first, that Toro failed to establish injury in fact because he did not allege which specific product he intended to purchase, Artizan Br. at 16; second, that he failed to establish redressability because he failed to plausibly plead that he would return to the site to make a purchase were the issues corrected, *id.* at 17; and third, that he failed to establish traceability because he did not allege that any of the alleged "accessibility issues" actually prevented him from making a purchase, *id.* at 14. None of these arguments are persuasive.

Starting with injury in fact, the Court easily rejects Artizan's argument Toro failed to allege which "style" of coffee product he intended to purchase. *Id.* at 16. To the contrary, he identified the "exact" type of good he wanted to buy: "decaffeinated coffee pods for his Nespresso-branded coffee machine." Compl. ¶¶ 10, 37. As his complaint alleges, Toro consumes this sort of coffee pod every day, and he came across Artizan's website when searching online for vendors who sell them. *Id.* ¶ 10. In other words, Toro identified the specific type of product he wanted to buy, and even articulated a basis for why he was seeking it out. These specific allegations about the desired product distinguish this case from those cited by Artizan, where plaintiffs alleged generally that they wished to purchase "products" without giving any details about which products those might be. *See, e.g.*, *Jaquez v. Aqua Carpatica USA, Inc.*, No. 20-cv-8487 (ALC), 2021 WL 3727094, at *4 (S.D.N.Y. Aug. 20, 2021) (dismissing complaint where plaintiff failed to specify product)[2]; *Guglielmo v. Neb. Furniture Mart, Inc.*, No. 19-cv-11197 (KPF), 2020 WL 7480619, at *4

---

[2] *See also* Amended Complaint, *Jaquez*, 2021 WL 372094 (No. 20-cv-8487), Dkt. No. 14 ¶¶ 22, 30 (complaint in *Jaquez* alleging only that plaintiff intended to "potentially mak[e] a purchase of the Defendant's products" in general).

(S.D.N.Y. Dec. 18, 2020) (similar).[3]  And as other courts in this district have found, Toro was not required to be any more specific than he was here—and certainly was not required to identify an "exact product" by SKU number or specific webpage.  *Angeles v. Grace Prods., Inc.*, No. 20-cv-10167 (AJN), 2021 WL 4340427, at *2 (S.D.N.Y. Sept. 23, 2021) (rejecting argument that ADA plaintiff required to "state which exact product she intended to buy and on what page"); *Loadholt v. Shirtspace*, No. 22-cv-2870 (ALC), 2023 WL 2368972, at *3 (S.D.N.Y. Mar. 6, 2023) (finding plaintiff was sufficiently specific in alleging that he wished to "purchase several T-shirts" without specifying exact shirt).[4]  Here, Toro gave the specific type of product he wished to purchase—organic, decaffeinated Nespresso pods—and that was more than sufficient for standing purposes.

Artizan's intent-to-return argument fails for similar reasons.  According to Artizan, Toro lacks standing because he offers only a "some day intention[]" that he might return to its website to purchase coffee pods, without offering any concrete plans to actually do so.  Artizan Br. at 17 (internal quotation marks omitted).  That is not an accurate characterization of the complaint.  In it, Toro alleges that he regularly and exclusively drinks organic Nespresso pods, which are "difficult to find" and "usually unavailable in physical stores."  Compl. ¶ 37.  As it turns out, Artizan offers that "exact product[]," *id.*, and even in the decaffeinated form that Toro prefers, *id.* ¶ 10.  The complaint further alleges, moreover, that he has (unsuccessfully) returned to Artizan's website no less than three times to re-attempt a purchase.  *Id.* ¶ 36.  Accepting those allegations as true, it is certainly plausible that Toro will make a similar attempt to purchase the pods he wants once the barriers are removed.  *See Loadholt*, 2023 WL 2368972, at *3 (finding intent to return

---

[3] *See also* Complaint, *Guglielmo*, 2020 WL 7480619 (No. 19-cv-11197), Dkt. No. 1 ¶ 24 (complaint in *Guglielmo* alleging only that plaintiff wanted to make purchase without specifying exact product or even type of product)

[4] *See also* Amended Complaint, *Loadholt*, 2023 WL 2368972 (No. 22-cv-2870), Dkt. No. 13 ¶ 32 (confirming that plaintiff did not identity a specific t-shirt).

where plaintiff alleged that he had returned to website and that he would like to do so again once issues were resolved).

Nor does Artizan make headway in arguing that Toro failed to articulate which specific "issues actually prevented [him] from purchasing any items." Artizan Br. at 15. In Artizan's telling, Toro provided only a "laundry list of alleged 'accessibility issues'" but failed to explain how any of them proved to be a barrier to his making a purchase.[5] *Id.* at 14. But that is just another mischaracterization of the complaint. In actuality, it alleges that numerous issues derailed Toro's attempts to buy pods, including (1) disorienting pop-up windows that automatically appeared and "essentially rendered the website unusable with a screen-reader," (2) missing "skip to content" links that would have allowed Toro to bypass repeated blocks of content, (3) "incorrectly defined" landmark structures that made it difficult for Toro to understand which page section they led to, (4) heading roles that were applied to the wrong content, which prevented him from scanning the home page quickly for content of interest, (5) multiple "heading level 1" tags per page, which made it hard to identify the main section, and (6) defects in the "Navigation" menu, which did not allow repeated content to be expanded or collapsed, and still included the sub-menu in the reading order even after it was collapsed, as well nine additional issues of various forms. *Id.* ¶ 32. These allegations about specific barriers—and how they defeated Toro's ability to use the website— differentiate this case from others invoked by Artizan, which merely "list[ed]" various "programming errors" without "tether[ing] [them] to any alleged injury." *Rizzi v. Hilton Domestic Operating Co., Inc.*, No. 18-cv-1127 (SJF) (ARL), 2019 WL 5874327, at *5 (E.D.N.Y. July 18, 2019) (internal quotation marks omitted), *report and recommendation adopted*, 2019 WL 4744209

---

[5] Although Artizan labels these arguments as sounding in standing, they overlap heavily with Artizan's merits arguments, which are similarly rooted in the contention that the barriers prevented Toro from using the website. The Court thus revisits these arguments below in connection with Artizan's Rule 12(b)(6) motion, where it rejects them for the same reasons.

(Sept. 30, 2019); *Mendez v. Apple Inc.*, No. 18-cv-7550 (LAP), 2019 WL 2611168, at *2 (S.D.N.Y. Mar. 28, 2019) (plaintiff alleged only "general barriers" without specifying "which one of them prevented her" from using website); *Guglielmo*, 2020 WL 7480619, at *5 (plaintiff failed to allege "where exactly on the Website he encountered these barriers"). Because Toro has plausibly alleged that the website deficiencies prevented him from making a purchase, they do not pose a standing issue here. Artizan's Rule 12(b)(1) motion to dismiss for lack of standing is therefore denied.

## II.    Mootness

The Court also rejects Artizan's argument that Toro's ADA claim has been mooted by its recent website redesign. *See* Artizan Br. at 9. A claim must be dismissed under Rule 12(b)(1) as moot "[i]f an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013). Defendants typically cannot moot a claim, however, by simply deciding to cease the challenged conduct. Under the "voluntary cessation" doctrine, they must show not only that those activities have ceased but also that they "cannot reasonably be expected to recur." *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024) (internal quotation marks omitted). Because mootness is an issue of "subject matter jurisdiction, the court may resolve the disputed jurisdictional facts by referring to evidence outside of the pleadings, such as affidavits." *Zappia Middle E. Constr. Co.*, 215 F.3d at 253.

Mootness frequently arises in ADA website cases when, as here, a defendant asserts that it has fixed all of the alleged defects. One way such a defendant can establish mootness is by "filing . . . affidavits and similar documentation to show" that it "has fixed accessibility issues on [its] website." *Quezada v. U.S. Wings, Inc.*, No. 20-cv-10707 (ER), 2021 WL 5827437, at *3 (S.D.N.Y. Dec. 7, 2021); *see also Sanchez v. NutCo, Inc.*, No. 20-cv-10107 (JPO), 2022 WL

7

846896, at *3 (S.D.N.Y. Mar. 22, 2022). But even when defendants can produce such an affidavit, that affidavit must "meet[] the 'formidable burden' of demonstrating that it is 'absolutely clear the alleged wrongful behavior could not reasonably be expected to recur.'" *Wu v. Jensen-Lewis Co., Inc.*, 345 F. Supp. 3d 438, 441 (S.D.N.Y. 2018) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). For that reason, courts in this district routinely deny motions to dismiss for mootness when the parties file "competing evidence" disputing whether alleged ADA violations have indeed been fixed. *Sanchez*, 2022 WL 846896, at *3 (denying motion due to competing declarations, including one filed by Toro's expert Robert D. Moody); *Quezada*, 2021 WL 5827437, at *3 (same with another Moody declaration); *Angeles*, 2021 WL 4340427, at *2 (same); *Paguada v. Yieldstreet Inc.*, No. 20-cv-9254 (LGS), 2021 WL 4896278, at *3 (S.D.N.Y. Oct. 20, 2021) (finding that plaintiff's claims were not mooted even when "Defendant implemented the UserWay plugin" since "Defendant's evidence [was] controverted" by Moody's declaration that website issues persisted).

Although Artizan submitted affidavits to that effect here, Toro submitted competing evidence that that precludes dismissal at this stage. To be sure, Artizan's affidavits demonstrate that it has made significant improvements to its website, and has fixed many of the alleged defects. As Artizan's CIO and CTO Juilo Abril explains in his affidavits, Artizan redesigned its website with the assistance of an outside software firm to fix many of the alleged deficiencies, and even subscribed to a website tool that monitors compliance with WCAG standards. *See* Abril Decl. ¶¶ 11–13; *see also* Dkt. No. 31-1 ("Abril Supp. Decl."). Abril also says that he personally tested the website using NEDA, Toro's screenreader of choice, and "confirm[ed] that all of the issues identified in the Complaint and Amended Complaint have been remedied." Abril Decl. ¶ 14–15.

In response, however, Toro submitted his own declaration from software expert Robert D. Moody that contests Abril's assertions.  Although Moody's declaration was far from comprehensive, the Court find that it prevents—if only barely—a finding of mootness at this stage. In his declaration, Moody specifically identified six issues alleged in the Complaint—pop-up windows, skip-to-content links, landmark structures, heading roles, heading level 1 tags and the navigation menu—and declared under oath that they continued to persist even after Artizan overhauled its website.[6]  *See* Moody Decl. ¶ 15(A)–(F); *see also id.* ¶ 27 ("[T]he issues identified by the Plaintiff were found to exist and continue to exist today."); Compl. ¶ 32(a)–(f).  And while Abril's declarations dispute Moody's claims, *see* Abril Supp. Decl. ¶ 20, they fall short of "demonstrating that it is 'absolutely clear'" that the issues have been fixed.  *Wu*, 345 F. Supp. 3d at 441 (quoting *Friends of the Earth*, 528 U.S. at 190); *see also Sanchez*, 2022 WL 846896, at *3 (denying motion to dismiss when presented with competing declarations); *Quezada*, 2021 WL 5827437, at *3; *Angeles*, 2021 WL 4340427, at *2.

Moreover, the outside security firm's report—attached as an exhibit to Abril's own declaration—acknowledges that at least two of the issues identified by Toro were not fully fixed after all, even though the firm "recommended" doing so.  Abril Decl. at 16 (recommendation to "migrate the website to a new platform" to resolve navigation menu issue); *id.* at 17 (similar for navigation sub-menu issue)[7]; *see also id.* ¶ 16(f)–(g) (Abril confirming that these two issues were not fixed).  And while the firm's report noted that these accommodations would be expensive, Artizan did not raise an "undue burden" defense that would excuse its failure to take action.

---

[6] Although Moody identified 21 additional issues with Artizan's website, Toro did not cite those issues in his complaint or allege that they interfered with his ability to use the site.  *See* Moody Decl. ¶ 17.  The Court thus does not consider those issues here.

[7] Because the firm's report was not separately paginated within the Abril Declaration, the page numbers here refer to the overall ECF pagination of the Abril Declaration.

*Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 393 (E.D.N.Y. 2017) (discussing undue burden defense for websites); *see also Am. Council of the Blind of N.Y., Inc. v. City of New York*, 579 F. Supp. 3d 539, 582 (S.D.N.Y. 2021) (discussing ADA undue burden defense generally). Artizan thus has no legal justification for leaving these accessibility issues in place.

In short, not only does Artizan's own affidavit admit that some issues were not completely resolved, it also fails to offer proof to refute Moody's claims that other defects persist. Because it is not "absolutely clear" that the website issues have been fixed, Artizan has not met its burden of establishing mootness through voluntary cessation. *Sanchez*, 2022 WL 846896, at *3 (quoting *Wu*, 345 F. Supp. 3d at 441).

## III.    Personal Jurisdiction

Artizan next moves to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. "A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant." *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02-cv-4695 (LTS), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)). When there has been neither discovery nor an evidentiary hearing, the plaintiff must plead "allegations sufficient to establish a prima facie case for the exercise of jurisdiction." *Id.* "As Rule 12(b)(2) motions are inherently matters requiring the resolution of factual issues outside of the pleadings, courts may rely on additional materials outside the pleadings when ruling on such motions." *Quezada*, 2021 WL 5827437, at *5 (alterations and internal quotation marks omitted) (collecting cases).

Courts in New York assess personal jurisdiction with a two-step analysis. *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). They first must determine

whether personal jurisdiction is appropriate under the forum state's jurisdictional statutes, which here are New York Civil Practice Law and Rules ("C.P.L.R.") §§ 301 and 302. *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010). If so, then courts must assess whether the exercise of personal jurisdiction over the defendant would comport with the Due Process Clause of the United States Constitution. *See id.* at 164.

Artizan asserts that neither step is met here. The Court disagrees.

### A.    New York's Long-Arm Statute

Toro asserts that the Court has specific jurisdiction over Artizan pursuant to C.P.L.R. § 302(a)(1), which extends personal jurisdiction to "any non-domiciliary" who (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state," provided that (2) the cause of action "aris[es] from" those acts. In ADA cases, whether maintaining a website qualifies as "transact[ing] business" depends on the website's "degree of interactivity." *Sanchez*, 2022 WL 846896, at *4 (quoting *Touro Coll. v. Fondazione Touro Univ. Rome Onlus*, No. 16-cv-3136 (DAB), 2017 WL 4082481, at *8 (S.D.N.Y. Aug. 31. 2017)). Websites that are purely passive, such as those for "posting" and displaying information, generally do not give rise to specific jurisdiction under Section 302(a)(1). *Id.*; *see also Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 418 (S.D.N.Y. 2009) ("[T]he mere availability of the site to users in New York, standing alone, does not amount to transacting business in the state."). But when a defendant operates an "interactive website[] accessible in New York, such as those involving the purchase and exchange of goods," specific jurisdiction will exist. *Quezada*, 2021 WL 5827437, at *6.

Artizan does not dispute the second element—whether Toro's claims arise out of its alleged business transactions—and contests only whether those alleged transactions qualify as

"transact[ing] any business" in New York under C.P.L.R. § 302(a)(1). *See* Artizan Br. at 18. On that front, Artizan claims that its website is merely "passive" and thus cannot qualify as a business transaction in New York. *Id.* (internal quotation marks omitted). Toro's complaint alleges otherwise, however. According to Toro, Artizan's site sells a variety of organic coffee products, Compl. ¶¶ 25–26, which places it firmly within the "interactive" category of websites that "allow[] for the purchase and exchange of goods," *Quezada*, 2021 WL 5827427, at *6–7. And it allegedly offers and sells those products to persons in New York, Compl. ¶¶ 15, 18, which Artizan does not contest. In fact, as Toro also points out, Artizan's website has a dedicated page encouraging customers who "live in New York" to purchase its Nespresso pods from various local retailers here. *See* https://artizancoffee.com/pages/new-york-nespresso?srsltid=AfmBOopU8E1ucK5 aPPDOCJGo2vjhPgP1i0J4zaJI6Jrp3SdBSFt9Ci3s (last visited August 15, 2025).[8] Although it is not necessary for a website to specifically "solicit" or "advertise" to customers within New York, Artizan's attempts to do that here only further confirm that its website transacts business in New York within the meaning of C.P.L.R. § 302(a)(1). *Dicks v. Cook's Junction, Inc.*, No. 22-cv-6495 (LJL), 2023 WL 2775830, at *4 (S.D.N.Y. Apr. 4, 2023); *see also Two's Co., Inc. v. Hudson*, No. 13-cv-3338 (NSR), 2014 WL 903035, at *4 (S.D.N.Y. Mar. 6, 2014); *Sanchez*, 2022 WL 846896, at *4.

### B.    Due Process

Artizan also contends that exercising jurisdiction over it would violate Due Process under the *International Shoe* test, because it "does not maintain any continuous or systematic business

---

[8] As the Second Circuit has noted, "it may be appropriate to take notice of" a website's content when its "authenticity . . . has not been questioned." *See also Hotel Emps. & Rest. Emps. Union, Loc. 100 v. N.Y.C. Dep't of Parks & Recreation*, 311 F.3d 534, 549 (2d Cir. 2022). Other courts in this district have done just that when adjudicating ADA website cases, including in circumstances strikingly similar to those here. *Sanchez*, 2022 WL 846896, at *4 (looking to current version of website as evidence that defendant shipped goods throughout the country).

operations in New York." Artizan Br. at 19 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). That argument requires little discussion. As courts in this district consistently hold, defendants who qualify as "transacting business" in New York via an interactive website may be subjected to personal jurisdiction here, without any Due Process issue. *See, e.g.*, *Quezada*, 2021 WL 5827437, at *7 ("Since the Court holds that [the defendant's] contacts with New York through their website are purposeful and related to the cause of action so that [they] ha[ve] sufficient minimum contacts under C.P.L.R. § 302(a)(1), the Court also finds that these contacts meet the due process requirements."); *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 515 (S.D.N.Y. 2016) ("[T]he requisite 'minimum contacts' analysis overlaps significantly with New York's § 302(a)(1) inquiry into whether a defendant transacted business in the State."). By making its interactive website readily available to those in New York—not to mention specifically advertising to customers there—Artizan purposefully availed itself of New York and established sufficient contacts to meet the requirements of Due Process.

## IV.    Failure to State a Claim

Artizan further moves to dismiss Toro's ADA claim for failure to state a claim under Rule 12(b)(6). To survive a motion under that rule, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

According to Artizan, Toro's claim fails because he does not "allege that barriers or functional problems with the Website prevented him from purchasing a specific product or line of products on Defendant's Website." Artizan Br. at 18. The Court rejected that same argument

when addressing Artizan's standing objections, and it does so again here. As it explained, Toro's complaint points to multiple features of Artizan's website that allegedly prevented him from purchasing organic Nespresso pods, ranging from pop-up windows that "essentially rendered the website unusable" to various landmarks and heading features that rendered the site all but impossible to navigate. *See* Compl. ¶ 32. Those allegations state a claim, and Artizan's motion to dismiss the ADA claim is denied.

## V.    State-Law Claims

Artizan also moves to dismiss Toro's state-law claims on several grounds. It first argues that these claims should be dismissed for the same reasons as Toro's ADA claim, since the same legal standards generally apply. *See* Artizan Br. at 19. Because the Court has found that Toro's ADA claim survives, it denies this motion for the same reasons. Nor will the Court dismiss the state-law claims for lack of supplemental jurisdiction, since Toro's ADA claim survives and provides a basis to retain jurisdiction over the supplemental state-law claims. *See* 28 U.S.C. § 1367(a).

Finally, Artizan moves to "dismiss" Toro's requests for civil penalties and punitive damages under the NYCHRL. Artizan Br. at 21. In particular, it argues that civil penalties may not be recovered by plaintiffs under the NYCHRL, and that all such penalties must be paid instead to the general fund of New York City. It further contends that Toro has not alleged the sort of egregious conduct that could support a demand for punitive damages. In response, Toro argues that these arguments are "procedurally premature," because damages are not an "independent cause of action" and thus cannot be the subject of a motion to dismiss. Toro Opp'n at 25 (quoting *Guerrero v. Ellusionist.com, Inc.*, No. 22-cv-2465 (ER), 2023 WL 3847402, at *4 (S.D.N.Y. June 6, 2023)).

14

As a threshold matter, the Court agrees with Artizan that it may take up challenges to the various types of damages that Toro seeks.  Although some decisions like *Guerrero* have deemed such challenges premature, many others have entertained arguments to dismiss or strike damages theories, especially when there was a "categorical" bar on certain types of damages.  *Doe v. Indyke*, 457 F. Supp. 3d 278, 283–84 (S.D.N.Y. 2020) (collecting cases cutting both ways and distinguishing those favoring Toro's position here); *see also Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*, 680 F. Supp. 3d 322, 353–54 (S.D.N.Y. 2023) (striking request for punitive damages as categorically barred); *Glob. Art Exhibitions, Inc. v. Kuhn & Bülow Italia Versicherungsmakler GmbH*, 607 F. Supp. 3d 421, 428 n.3 (S.D.N.Y. 2022).[9]  And while the Second Circuit has yet to comment on this issue, it has routinely affirmed dismissals of damages theories without hesitation.  *See, e.g.*, *N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 130 (2d Cir. 2001) (affirming dismissal of claim for punitive damages when complaint "alleged no facts" in support of necessary element); *Henry v. County of Nassau*, 6 F.4th 324, 336 (2d Cir. 2021) (affirming dismissal of punitive damages claim against municipality because such damages were categorically barred).  The Court thus sees no blanket impediment to addressing Artizan's arguments, to which it now turns.

Starting with civil penalties, the Court agrees with Artizan that individual plaintiffs may not recover civil penalties in actions brought under the NYCHRL.  By statute, such penalties "shall be paid into the general fund of the city"—not to individual plaintiffs.  N.Y.C. Admin. Code § 8-127(a).  That language means what it says, as at least one other court in this district has found.  *See Monegro v. I-Blades, Inc.*, No. 21-cv-3093 (GBD), 2023 WL 2499718, at *5 (S.D.N.Y. Mar. 14,

---

[9] As Judge Engelmayer explained in *Indyke*, it is not necessary to decide whether these challenges should be made as Rule 12(b)(6) motions to dismiss or Rule 12(f) motions to strike, since either way defendants have a mechanism to challenge the legal sufficiency of a damages claim.  *See* 457 F. Supp. 3d at 284 (calling this a purely "conceptual debate" before proceeding to address the merits of the damages challenge).

2023) ("[C]ivil penalties . . . are payable to the City, not to private plaintiffs.").  Toro's request for civil penalties is therefore dismissed.

Artizan also urges the Court to dismiss Toro's claim for punitive damages, on the premise that he "failed to allege any facts whatsoever" to support a claim for such relief.  Artizan Br. at 21. But that is a puzzling argument, as Toro's complaint does not mention punitive damages at all, much less demand them as a form of relief.  *See* Compl. ¶¶ 97–108 (asserting claim under NYCHRL without mention of punitive damages); *id.* at 28–30 (requesting injunction, declaration, "[c]ompensatory damages," attorney fees and interest, without mention of punitive damages). Although the Court shares Artizan's view that punitive damages would appear to be inappropriate in this case, Toro's complaint does not even seek such damages to begin with, so there is no basis to dismiss or strike such a demand.  The motion to do so is thus denied.

## CONCLUSION

For these reasons, the motion to dismiss is denied, except to the extent it moves to dismiss or strike Toro's request for civil penalties under the NYCHRL.  The Clerk of Court is respectfully directed to terminate the motion pending at docket number 20.

SO ORDERED.

Dated:    September 17, 2025
          New York, New York

Ronnie Abrams
United States District Judge